IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTEN J. RAMIREZ, | ) | CASE NO. 1:19CV653 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| BRANDESHAWN HARRIS, | ) | JONATHAN D. GREENBERG |
| Warden | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is

the Petition of  Christen J. Ramirez ("Ramirez" or "Petitioner"), for a Writ of Habeas Corpus filed

pursuant to 28 U.S.C. § 2254. Ramirez is in the custody of the Ohio Department of Rehabilitation

and Correction at the Trumbull Correctional Institution, pursuant to journal entry of sentence in the

case *State v. Ramirez*, Nos. 15-CR-0700 and 15-CR-0755.   For the following reasons, the

undersigned recommends that the Petition be DISMISSED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct unless rebutted by

clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d

439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011). The state

appellate court summarized the facts underlying Ramirez's conviction as follows:

> [*P2] In the early morning hours of June 24, 2015, Uvon Burns was asleep in her bedroom when she awoke to a man pointing a gun at her, demanding drugs and money. When her dog moved to protect her, the intruder shot the dog. She had no drugs, but tossed her purse at him which contained her tip money from bartending at the American Legion the night before. He picked up the purse and ran.

> [*P3] Burns discovered her boyfriend, Jason O'Neal, had climbed into bed with her after she fell asleep. He laid still so the intruder would not see him. He heard the intruder ask for weed and money. He saw the silhouette of a man in a grey hoodie drawn tight, holding a gun. He noted a tattoo on the intruder's hand, and a pair of Nike boots he had earlier seen on Appellant. He was later able to identify Appellant by his voice as well as the tattoo and boots.

> [*P4] Burns and O'Neal called the police and discovered the intruder gained entry into the home by kicking the panel out of the front door. The dog survived after receiving emergency veterinary care.

> [*P5] At two o'clock that morning,  Appellant's co-defendant Marcelluis Luckie woke up his girlfriend, Andrea McDowell, to tell her Burns had been robbed and her dog had been shot. McDowell and Burns were coworkers and friends. Luckie claimed he heard about the incident from his friend George Kelly. He insisted they check on Burns the next morning, and they drove to Burns' house. Luckie told Burns and O'Neal he was sorry about their dog. O'Neal found it strange Luckie knew about the dog because the incident was not yet public knowledge.

> [*P6] On June 25, 2015, Christshanda Webb was at the home of her brother, Myron Webb, waiting for a cable service installer to arrive. She heard a knock on the back door. She checked the front of the house for a cable van, but no one was there. Others in the house checked the rear door and found Appellant attempting to force his way into the house. When he noticed people in the house, he ran. Christshanda walked up the street in the direction Appellant was headed. She saw Luckie approach driving a black Pontiac, and Appellant jumped on the hood.

> [*P7] Shamille Chapman and her baby were asleep on the couch on June 26, 2015, when she awoke to find Appellant and Luckie standing over her, asking for money and drugs. Luckie held a gun, and Appellant held a crowbar. Luckie was wearing a black Ohio State hoodie, a mask, gloves, and Hello Kitty glasses. Appellant was dressed in all black. Appellant took electronics from the house and put them in bags. The men asked her to have her son come downstairs, and they held him at gunpoint with Chapman. The men demanded she call her boyfriend, Myron Webb, to ask him

2

to come home, and threatened her if she warned him something was amiss. She called Webb and asked him to come home. The men continued to ransack the house while waiting for Webb to arrive, asking her to call Webb multiple times. Appellant and Luckie tied up Chapman's son with t-shirts and an electrical cord.

[*P8] When Webb arrived home, the men ordered him to the ground. They told Webb they heard he had "bricks." Webb responded he did not have drugs, but gave them his money. Unhappy with what they had received, the men planned to stay all night and have Webb withdraw money from the bank for them the next morning. They told Webb they would put a pillowcase over his head and take the baby with them. Webb asked them not to involve his family. When they ordered Webb to walk toward the kitchen, Webb charged the men. Chapman grabbed the baby and ran into the kitchen where her son was tied up. She got outside with her son and the baby and screamed for the neighbors to call 911.

[*P9] After seeing Appellant and Luckie run away, Chapman went back into the house where she found Webb rolling around on the ground, bleeding from stab wounds to his head, neck, back, and upper arms. He was transported to the hospital where he died the following day. The medical examiner found twenty-five stab wounds on Webb.

[*P10]  During the afternoon of June 26, 2015, O'Neal saw Appellant with a group of people gathered outside a friend's house. During a conversation, O'Neal recognized Appellant's voice from the break-in on June 24, 2015. O'Neal punched Appellant and choked him. After he was beaten by O'Neal, Appellant called his grandfather and told him to get rid of bullets and a pair of "Jordans" which were at his house. Appellant then called Luckie and told him he got beat up over shooting O'Neal's dog. Appellant changed his shoes at his house and his clothes at his mother's house before going to the hospital, where he claimed his injuries were the result of a fall from a tree.

[*P11] Chapman's neighbors reported seeing Appellant and Luckie flee the scene of the attack on Webb in a black Pontiac Grand Prix. When police went to Appellant's house to question witnesses, they found a black Pontiac which they identified as the vehicle they were looking for in connection with Webb's murder. Police could see blood on the steering wheel and a tire iron in the car. They found the vehicle was registered to McDowell. Blood was later discovered on the driver's side door, the steering wheel, and the center console lid. DNA testing from the steering wheel cover showed a DNA mixture including Webb and Appellant. Webb's blood was also found under the passenger door handle and at two locations on the driver's seat.

(Exhibit 30, Opinion ¶¶ 2-12; *State v. Ramirez*, Fifth App. Dist. No. 16CA95, 16CA96, 2018 Ohio

App. LEXIS 681, 2018 Ohio 595 (February 14, 2018) at ¶¶ 2-11.)

## II. Procedural History

**A.      Trial Court Proceedings**

On August 11, 2015, the Richfield County Grand Jury indicated Ramirez on the following

charges:

- •      one count of aggravated burglary,

- •      two counts of aggravated robbery, and

- •      one count of injuring animals.

All four indictments related to the crime on June 24, 2015.  (Doc. No. 9-1, Ex. 1.)

On August 24, 2015, a different Richfield County Grand Jury indicated Ramirez on the

following charges:

- •      two counts of aggravated murder,

- •      four counts of kidnapping,

- •      one count of aggravated burglary,

- •      one count of robbery, and

- •      one count of tampering with evidence with firearm and repeat violent offender
       specification.

These indictments related to the crime committed on June 25, 2015. (*Id*., Ex. 2.)

Ramirez pled not guilty to all charges in both indictments. (*Id*., Ex. 3 & 4.)

On April 19, 2016, the State moved to consolidate Case Nos. 2015-CR-0700 and

2015-CR-0755 with co-defendant's case no. 2015-CR-0756.  (*Id*., Ex. 8.)  In separate responses for

case numbers 2015-CR-0700 and 2015-CR-0755, Ramirez filed a response in opposition to

consolidation and demanded separate trials. (*Id*., Ex. 9 & 10.)  On April 22, 2016, the trial court

overruled the motion to consolidate in case number 2015-CR-700 but granted the motion in case

4

number 2015-CR-0755. (*Id.*, Ex. 11 & 12.)  The State filed a motion for reconsideration to join case 2015-CR-0700 with the other two cases.  (*Id.*, Ex. 13.)  On May 12, 2016, the trial court again overruled the motion for case no. 2015-CR-0700 to join the other cases for trial. (*Id.*, Ex. 14.)

On April 22, 2016, Ramirez, through counsel, filed a motion to suppress evidence seized by the police.  (*Id.*, Ex. 5.)  The State filed a response in opposition to the motion. (*Id.*, Ex. 6.)  The trial court held a hearing on the matter and denied Ramirez's motion. (*Id.*, Ex. 7.)

On June 30, 2016, the State filed a motion to consolidate the cases for Ramirez with the cases Marcelluis Luckie for the upcoming trial.  (*Id.*, Ex. 15.) Ramirez renewed his opposition to consolidation and renewed motion for a separate trial for aggravated murder.  (*Id.*, Ex. 16.) The State filed a response to Ramirez's Opposition and Motion.  (*Id.*, Ex. 17.)  On August 9, 2016, the trial court granted the motion to consolidate the cases to one trial. (*Id.*, Ex. 18.)

Ramirez filed a motion in limine to prohibit the State from using certain prosecution witnesses to identify Ramirez as the perpetrator of the crimes in the indictments.  (*Id.*, Ex. 19.)  The State filed a response to the motion. (*Id.*, Ex. 20.)  On October 10, 2016, the trial court overruled the motion. (*Id.*, Ex. 21.) Ramirez filed another motion in limine to limit testimony regarding where the co-defendants met in prison. (*Id.*, Ex. 22.)  The trial court granted the motion that there could be testimony that they knew each other but not where they met. (Doc. No. 10-7 at PageID #: 1164-65.)

The case proceeded to jury trial on October 18, 2016.   (*Id.*, at PageID #: 1054.) On November 16, 2016, the jury returned its verdict, finding Ramirez guilty of all charges, except for one of the aggravated murder counts. (Doc. No. 9-1, Ex. 23 & 24.)

On November 16, 2016, the state trial court held a sentencing hearing.  The trial court

sentenced Ramirez to an aggregate sentence of life incarceration without the possibility of parole with additional consecutive sentences.  (*Id*., Ex. 25.)

**B.      Direct Appeal**

Ramirez, through a new appellate counsel, filed a timely notice of appeal to the Fifth District Court of Appeals, Richland County, Ohio in case numbers 2016-CA-0095 and 2016-CA-0096. (*Id*., Ex. 26 & 27.)  In his appellate brief,[1] he raised the following assignments of error:

> I.      The trial court erred by joining the separate offenses charged in two separate cases, namely *State v. Ramirez*, Case No. 2015 CR 0700 and *State v. Ramirez*, Case No. 2015 CR 0755 in one trial.
>
> II.     The trial court erred when it joined Defendant Ramirez's cases with Defendant Luckie's cases in one trial.
>
> III.    The trial court erred when it denied the motion for new trial under *Bruton v. United States* (1968), 391 U.S. 123.
>
> IV.     The trial court erred when it permitted (over objection) in court identification from certain prosecution witnesses of Defendant Ramirez as the perpetrator of the crimes charged.
>
> V.      The trial court erred when it failed to suppress evidence obtained from a vehicle (1999 Black Pontiac Grand Prix) pursuant to improperly issued or invalid search warrants.
>
> VI.     The trial court erred when it failed to instruct the jury on factors to consider regarding eyewitness testimony as proposed by Defendant-Ramirez.

(*Id*., Ex. 28.)  The State filed a brief in response.  (*Id*., Ex. 29.)

On February 14, 2018, the state appellate court affirmed Ramirez's convictions.  (*Id*., Ex. 30.)

---

[1]  Although Ramirez separately filed briefs in the appeal of each case, the two briefs are identical, and both are included in record exhibit 28.

6

On May 10, 2018, Ramirez, proceeding *pro se*, filed a Notice of Appeal and a Motion for Leave to File a Delayed Appeal to the Supreme Court of Ohio in case number 2018-0652. *Id.*, Ex. 31 & 32.)

On June 27, 2018, the Supreme Court of Ohio denied Ramirez's motion and dismissed the case. (*Id.*, Ex. 33.)

**C.      Application to Reopen Appeal under Ohio App. R. 26(B)**

On May 14, 2018, Ramirez filed a *pro se* Application to Reopen Appeal  in case numbers 16-CA-0095 and 16-CA-0096 pursuant to Ohio App. R. 26(B).  (*Id.*, Ex. 34.) His Application alleged "inadequate representation" by his appellate counsel and raised the following arguments:

> Assignment of error #1: Trial court erred when it permitted (over objection) in court identification from certain witnesses of defendant Ramirez as the perpetrator of the crimes charged.
>
> Assignment of error #2: The trial court erred when it failed to instruct the jury on factors to consider regarding eyewitness testimony as proposed by defendant Ramirez.
>
> Assignment of error #3: The trial counsel erred by joining the separate offenses charged in tow separate cases, namely State v. Ramirez, case # 2015 CR 0700 and State v. Ramirez, case # 2015 0755, in one trial.
>
> Assignment of error #4: Trial court failed to suppress Hi-Point weapons owner Mike Strassel testimony due to speculation, also failed to suppress gun assimilation [sic] testimony due to speculation.
>
> Assignment of error #7:  Trial court erred in allowing over objection the prosecutor to speak on phone records after records keeper could not authenticate Ramirez, phone records #s  567-241-5632 and #419-512-6663. In violations of O.R.C. business records. Trial court erred in overruling Ramirez objections due to speculation. Court violated Ramirez right to due process convictions and sentences against Ramirez should be reversed and remanded back to trial court.

(*Id.*, Ex. 34 at PageID#: 526, 530-32, 527.)

On  May 29, 2018, the state appellate court overruled the application to reopen the appeal.

7

(*Id.*, Ex. 36.)

On June 4, 2018, Ramirez filed a motion for reconsideration pursuant to App. R. 26(A). (*Id.*, Ex. 37.) On July 5, 2018, the state Court of Appeals overruled the motion. (*Id.*, Ex. 38.)

On August 6, 2018, Ramirez, proceeding *pro se*, filed a timely appeal to the Ohio Supreme Court under Case No. 2018-1174. (*Id.*, Ex. 39.) In his memorandum in support of jurisdiction, Ramirez asserted the following propositions of law:

I. Is an appellant deprived of the effective assistance of counsel when appellate counsel fails to protect his right to due process when his phone records are used without authentication and the defense was not permitted to confront the custodian of the records?

II. Is an Appellant denied the effective assistance of counsel when appellate counsel does not effectively present the issue of improper in-court identifications?

III. Is an appellant denied the effective assistance of counsel when appellate counsel did not effectively argue that proper jury instructions were omitted at trial to appellant's prejudice?

IV. Is an appellant denied the effective assistance of counsel when appellate counsel failed to effectively argue against prejudicial joinder of offenses, cases, and co-defendants?

V. Is an appellant denied the effective assistance of counsel when appellate counsel failed to effectively argue the trial court's error, over objection, in admitting prejudicial and misleading evidence regarding a weapon?

VI. Is an appellant denied the effective assistance of counsel when appellate counsel failed to effectively argue against the trial court's error of allowing evidence at trial that was obtained without a proper warrant and via improper entry?

VII. Is an appellant denied the effective assistance of counsel when appellate counsel failed to effectively argue against the improper stacking of inferences to obtain appellant's conviction?

(*Id.*, Ex. 40.) The State filed a memorandum that opposed jurisdiction. (*Id.*, Ex. 41.)

On October 10, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal

8

pursuant to S. C. Prac. R. 7.08(B)(4). (*Id.*, Ex. 42.)

**D.      Federal Habeas Petition**

On March 25, 2019,[2] Ramirez filed a Petition for Writ of Habeas Corpus in this Court and

asserted the following grounds for relief:

> **GROUND ONE**: Petitioner was denied a fair trial and due process when his two separate cases were joined in one trial.
>
> > **Supporting Facts**: Petitioner was charged with crimes in two separate indictments. The cases were unrelated. The charges in the first case were related to aggravated murder, while the second case involved aggravated burglary and robbery charges. The severity of the offenses, with the cases being violent offenses, prejudiced Petitioner causing the jury to lose its way. There were no witnesses who testified that testified in both cases, there were no shared victims, and no shared modus operandi. The joinder of the cases resulted prejudice and the denial of a fair trial.
>
> **GROUND TWO**: Petitioner was denied a fair trial and due process of law when he was forced to defend himself at trial with a codefendant in both cases, resulting in the joinder of no less than four cases at one trial.
>
> > **Supporting Facts**: Petitioner was forced to go to trial for two cases under two unrelated indictments. A co-defendant was also charged with the same crimes. The four indictments were joined into one trial. Petitioner and his co-defendant were found guilty on all counts due to the jury having lost its way by being overwhelmed with multiple and incongruous theories of guilt for both men. The joinder prevented the jury from assessing the evidence fairly and impartially, denying Petitioner a fair trial as constitutionally required.
>
> **GROUND THREE**: The Petitioner was denied due process of law when the trial

---

[2]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). However, the Petition herein did contained a blank declaration that its contents are true and correct and also left blank the date on which the Petition was placed in the prison mailing system. (Doc. No. 1 at 20.)  Because it arrived at the Court for filing on March 25, 2019, the Court will consider the Petition as filed on that date.

court denied his motion for new trial under *Bruton v. U.S.*, 391 U.S. 123.

> **Supporting Facts**: Petitioner was forced to go to trial with his co-defendant. Statements were made at trial related by Petitioner's co-defendant that were prejudicial. A witness at trial improperly and prejudicially implicated Petitioner's involvement as related to his co-defendant's comments. Petitioner was deprived of his right to a fair trial when the trial court denied the immediate motion for mistrial.

**GROUND FOUR**: Petitioner was denied due process and a fair trial when his trial court permitted an improper in-court identification over objection from certain witnesses identifying Petitioner related to the crime.

> **Supporting Facts**: Petitioner filed a motion in limine requesting prohibition of certain witnesses from providing identification of Petitioner during trial. The motion was denied.  No evidence was ever presented of pretrial identification by any witness. The identifications were consistent with vouching and the error was not cured by the cross-examination at trial. First time in-court identifications are unduly suggestive and prejudiced Petitioner, preventing him from receiving a fair trial.

**GROUND FIVE**:  Petitioner was denied due process when his trial court failed to suppress evidence obtained from a vehicle pursuant to an improperly issued or invalid search warrant under the Fourth Amendment to the U.S. Constitution.

> **Supporting Facts**:  Evidence was obtained from a vehicle that was towed without a warrant. When a warrant was eventually obtained, the initial detective who towed the vehicle was not the person who testified at the warrant hearing, and had no personal knowledge of the information used to obtain the warrants. The warrants were invalid and the evidence obtained therefrom was fruit of the poisonous tree. The trial court improperly denied Petitioner's motion to suppress evidence, depriving him of due process. The evidence that was obtained from the illegal entry into the vehicle should not have been permitted to be used at trial.

**GROUND SIX**:  Petitioner was denied due process when the trial court failed to provide proper instructions to the jury related to factors regarding eyewitness testimony.

> **Supporting Facts**: Petitioner provided the trial court with proper instructions regarding eyewitness testimony to be used at his trial.

10

> The instructions were compliant with the holding of the Supreme Court and were both reasonable and applicable. The instructions provided by the trial court provided no indicia of reliability and prejudiced the Petitioner via the denial of due process.
>
> **GROUND SEVEN**:  Petitioner was denied due of law as he did not receive the effective assistance of counsel on appeal in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution.
>
> > **Supporting Facts**:  On appeal, Petitioner's counsel was ineffective for a multitude of reasons. These reasons included the failure to argue that phone records were not authenticated and the custodian not confronted; the failure to effectively argue against improper in-count identifications, prejudicial joinder, the admission of illegally obtained evidence, and the improper stacking of inferences used to obtain Petitioner's convictions, the use of improper and prejudicial jury instructions and the omission of proper instructions, and the admission of misleading and prejudicial evidence regarding a weapon. Petitioner suffered prejudice, as the errors were not harmless.

(Doc. 1.)

On July 26, 2019, Warden Brandeshawn Harris ("Respondent")  filed his Return of Writ. (Doc. No. 9.)  Ramirez filed a Traverse on December 2, 2019.  (Doc. No. 15.)   Respondent filed a sur-reply on December 10, 2019.  (Doc. No. 16.)  Ramirez filed a Response to the Sur-reply on December 26, 2019.  (Doc. No. 17.)

### III.  Exhaustion and Procedural Default

**A.**     **Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the

11

petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[3]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted.  *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731  32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir.

---

[3] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138  39; *Barkley v. Konteh*, 240 F. Supp. 2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n.28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id*.  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

13

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138  39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219  20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749  50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough  a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

14

**B.**    **Application to Petitioner**

Respondent asserts that habeas grounds one through six are procedurally defaulted because Ramirez failed to accomplish one complete round of the state's established review process review when Ramirez failed to timely appeal to the Supreme Court of Ohio.  (Doc. No. 9 at 20.)

Ramirez responds that his delayed appeal was caused by his "appellate counsel's failure to provide him with effective assistance by failing to deliver a notification and copy of the ruling, required for filing an appeal with the Ohio Supreme Court, until a very short time prior to the Notice of Appeal and the Memorandum in Support of Jurisdiction being due." (Doc. No. 15 at 12-13.)  He asserts that this "error of malfeasance" on the part of his appellate counsel, combined with a lack of access to the legal library at the Trumbull County Correctional Institution, and his unsuccessful request for help from the public defender's office, caused his delay.  (*Id*. at 13.)  Further, he asserts that he "took immediate action to file an appeal by contacting . . . the Ohio Public Defender's Office *on the day he received that late decision from his appellate counsel*."  (Doc. No. 17 at 7) (Emphasis in original).

The Supreme Court of Ohio requires that a jurisdictional appeal be filed within forty-five days of the judgment being appealed. S. C. Prac. R. 7.01(A)(1)(a)(I).  In felony cases, an appellant may file a motion for delayed appeal after that time has expired.  S. Ct. Prac. R. 7.01(A)(4). It is undisputed that Ramirez's appeal was untimely, and he therefore filed a motion for delayed appeal as provided for in the Ohio Supreme Court Practice Rules.  (Doc. No. 9-1, Ex. 31 & 32.)  He asserts that this delay should be excused because it was caused by his the failure of his appellate counsel to timely notify him of the appellate court decision.  However, his motion for delayed appeal was more than forty-five days after he belatedly received notice of the appellate court decision from his

15

appellate counsel, and therefore, as discussed below, even if this were legally sufficient cause to excuse the default, he cannot establish prejudice.

The sequence of event is as follows:

- On February 14, 2018, the state Court of Appeals issued its opinion.  (*Id*., Ex. 30.)

- On March 22, 2018, Ramirez asserts that he was first notified of the appellate court decision, when he received a letter from his appellate counsel.[4]  (*Id*., Ex. 32.)

- On May 10, 2018, Ramirez filed his notice of appeal and motion for delayed appeal in the Ohio Supreme Court.  (*Id*., Ex. 31 & 32.)

-  On June 27, 2018, the Ohio Supreme Court denied the motion for a delayed appeal.  (*Id*., Ex. 33.)

Had Ramirez's counsel not delayed in notifying him of the state appellate court decision, Ramirez's appeal would have been timely filed no later than Monday, April 2, 2018, which is forty-five days after the appellate decision was issued.[5]  Therefore, when Ramirez asserts he received notice of the appellate court decision, he had eleven days to timely file his notice of appeal in the Ohio Supreme Court.   In a similar case, the Sixth Circuit court held that an inmate who had received notice of the state appellate court decision only nine days before his dealing to timely file a notice of appeal in the Ohio Supreme Court, which, "assuming a four-day delay for mailing" left only "five full days in which to draft" the memorandum is support of jurisdiction, did not show cause to excuse the

---

[4]  Ramirez attached a "legal mail log" to his motion for a delayed appeal in support of this assertion.  (Doc. No. 9-1, Ex. 32 at 2.)

[5]  In fact, this is forty-seven days after February 14, 2018, but because the forty-five day deadline falls on Saturday, March 31, 2018, two days are added to reach the next business day.

16

procedural default of his claim.[6]  *Dickerson v. Warden, Ross Corr. Inst.*, 750 F. App'x 458, 462 (6th Cir. 2018.)

The *Dickerson* court emphasized that the holding in that case was limited to the facts before it.  *Id.* at 463.  However, even assuming, *arguendo,* that Ramirez's appellate counsel's delay in notifying him of the denial of his appeal provided legally-sufficient cause for his procedural default, he still did not file his notice of appeal and motion for delayed appeal within forty-five days of actually receiving that notification.  It took Ramirez forty-eight days to file his notice of appeal and motion for delayed appeal after he asserts he first learned of the state appellate court's decision.  In a similar case, the Sixth Circuit court made clear that, even where appellate counsel's delay in notifying his client of an adverse appellate court ruling constituted constitutionally deficient performance, the petitioner must still show that he would have timely appealed but for his counsel's error.  *Smith v. ODRC*, 463 F.3d 426, 435 (6th Cir. 2006).  In *Smith*, the court explained that:

> [i]n assessing whether a defendant . . . "would have timely appealed" by considering whether the defendant "promptly expressed a desire to appeal," we apply a rebuttable presumption that if the period of time between when the defendant learned of the decision and when he or she attempted to appeal the decision is greater than the period allotted by state law for the timely filing of an appeal-here, forty-five days-the defendant fails to demonstrate that he or she "would have timely appealed" the decision but for the counsel's deficient failure to notify the defendant of the decision.

*Id.*

Here, because the forty-eight day period of time between the date Ramirez asserts he learned

---

[6] In contrast to *Bonilla v. Hurley* and *Hannah v. Conley*, which Ramirez asserts should not be relied on because they "predate the courts in the State of Ohio going completely computer-based, and certainly predates [sic] the Ohio Department of Rehabilitation & Correction providing legal resources by the sole means of computer access," the decision in *Dickerson* was rendered after both of these changes were implemented.  (Doc. No. 17 at 6.) The undersigned also notes that Ramirez cites no authority supporting his assertion that *Bonilla* and *Hannah* are no longer applicable precedents.

17

of the decision and the date he attempted to appeal the decision is greater than the forty-five day period allotted by state law for the timely filing of an appeal, Ramirez fails to demonstrate that he would have timely appealed the decision but for the counsel's failure to notify him of the decision. Further, the other circumstances which Ramirez asserts hindered his ability to attempt to appeal the decision within the forty-five days allotted    his limited access to the prison law library and hope that the public defender's office might assist him    have already been rejected by the Sixth Circuit. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (" pro se status before the Ohio Supreme Court is insufficient to establish cause to excuse his procedural default," " ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse his procedural default," and "the fact that [Petitioner's] time in the prison law library was limited . . . was insufficient to establish cause to excuse his procedural default.")

The Ohio Supreme Court's denial of Ramirez' delayed appeal is an adequate and independent basis for procedural default. *Bonilla*, 370 F.3d at 497.  As set forth *supra,* Ramirez has failed to establish prejudice as a result of his counsel's failure to notify him of the Ohio Court of Appeals decision denying his claims, and thus he cannot rely on his counsel's ineffective assistance to overcome the procedural default of grounds one through six of this petition.  Ramirez also cannot overcome the procedural default on his claims on the basis of a fundamental miscarriage of justice because he has not claimed, nor presented any evidence, that he was "actually innocent." *Lundgren*, 440 F.3d at 764 (internal quotation marks omitted).

For all the following reasons, the undersigned recommends that grounds one through six of Ramirez's habeas petition be DISMISSED on the grounds of procedural default.

## IV.  Review on the Merits

### A.    Legal Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The

relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination
>> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta)

of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183

L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v.*

*Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d

685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Indeed, the

Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal

law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S.

901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012).  *See also Lopez v. Smith*, 574 U.S. 1, 7, 135 S.Ct. 1,

4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general

principle of Supreme Court jurisprudence into a specific legal rule that this Court has not

19

announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  *See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 F. App'x 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785.  The Court

noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786 87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.").

1. **Ground Seven: Petitioner was denied due of law as he did not receive the effective assistance of counsel on appeal in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution**

The seventh ground of Ramirez's habeas petition is the only one that is not procedurally defaulted for the reasons set forth in section III.B. *supra*. Unlike grounds one through six, this ground was at least partially presented in a Rule 26(B) application that Ramirez timely appealed to the Ohio Supreme Court. (Doc. No. 9-1, Ex. 34.)

Ground seven of Ramirez's habeas petition asserts multiple failures constituting ineffective assistance of his trial counsel:

> On appeal, Petitioner's counsel was ineffective for a multitude of reasons. These reasons included the failure to argue that phone records were not authenticated and the custodian not confronted; the failure to effectively argue against improper in-count identifications, prejudicial joinder, the admission of illegally obtained evidence, and the improper stacking of inferences used to obtain Petitioner's convictions, the use of improper and prejudicial jury instructions and the omission of proper instructions, and the admission of misleading and prejudicial evidence regarding a weapon. Petitioner suffered prejudice, as the errors were not harmless.

(Doc. No. 1 at 16.)

a. **Partial Procedural Default**

Respondent asserts that this ground is partially defaulted because the habeas petition presents

21

"an elaborated version of his argument regarding ineffective assistance of appellate counsel" made in his appeal to the Ohio Supreme Court, and therefore several of the elements of his habeas ground were never fairly presented to the state courts for review.  (Doc. No. 9 at 50-51.)  Ramirez, proceeding *pro se*, submitted an Application pursuant to Ohio App. R. 26(B).  It asserted ineffective assistance of appellate counsel based on a multiple assignments of error.  (Doc. No. 9-1, Ex. 34.)  The Rule 26(B) application was denied, and Ramirez timely appealed the denial of his Application to the Supreme Court of Ohio, which declined to accept jurisdiction. (*Id.*, Ex. 42.)

Respondent asserts that only a single claim relating to ineffective assistance of counsel assignment of error seven was presented in this petition, and therefore all other claims in ground seven of Ramirez's habeas petition were procedurally defaulted.  (Doc. No. 9 at 51.)  This is factually inaccurate, as Ramirez points out in both his Traverse and his response to Respondent's Sur-Reply.  (Doc. No. 15 at 53; Doc. No. 17 at 3.)  Because Respondent provided a record with pages out of order, he perhaps overlooked the multiple, handwritten pages interspersed with typed pages on which Ramirez detailed the four other grounds for finding his appellate counsel provided ineffective assistance which he also raises here.  (Doc. No. 9-1, Ex. 34 at PageID #: 530-37.)  As he concedes, the Rule 26(B) filing was "confusing due to his lack of legal acumen" and it somewhat hard to read because it is handwritten.  (Doc. No. 15 at 53.)  He did not expressly reference his appellate counsel in assignments of error 1-4, and the state appellate court determined consideration of two of these issues was barred by *res judicata*, apparently understanding Ramirez to be arguing the issue that he believed his appellate counsel should have raised, rather than asserting error on the part of his appellate counsel.  (Doc. No. 9-1, Ex. 36 at PageID#: 553.)  Perhaps the Respondent overlooked the other two claims of error because the state appellate court did not address them in

its ruling (*Id*., Ex. 36.)  However, Ramirez cited the *Strickland* ineffective assistance of counsel standard in the application, and more clearly explained that he intended to argue the following issues as demonstrating ineffective assistance of his appellate counsel in his traverse as follows:

> Assignment of error #1: [Appellate counsel was ineffective for failing to properly argue] [The] trial court erred when it permitted (over objection) in court identification from certain witnesses of [Petitioner] as the perpetrator of the crimes charged.  Doc.# 9-1, PageID# 530.

> Assignment of error #2:  [Appellate counsel was ineffective for failing to properly argue] [t]he trial court erred when it failed to instruct the jury on factors to consider regarding eyewitness testimony as proposed by [Petitioner].  Doc.# 9-1, PageID# 531.

> Assignment of error #3:  [Appellate counsel was ineffective for failing to properly argue] [t]he trial counsel erred by joining the separate offenses charged in tow separate cases, namely State v. Ramirez, case # 2015 CR 0700 and State v. Ramirez, case # 2015 0755, in one trial.   Doc.# 9-1, PageID# 532.

> Assignment of error #4:  [Appellate counsel was ineffective for failing to properly argue] [t]he trial court failed to suppress Hi-Point weapons owner Mike Strassel['s] testimony due to speculation, also failed to suppress gun assimilation [sic] testimony due to speculation.  Doc.# 9-1, PageID# 537.

(Doc. No. 15 at 53.)   In addition, it is undisputed that he fairly presented the following ground in his Rule 26(B) application and subsequent appeal:

> Assignment of error #7:  Trial court erred in allowing over objection the prosecutor to speak on phone records after records keeper could not authenticate Ramirez, phone records #s 567-241-5632 and #419-512-6663. In violations of O.R.C. business records. Trial court erred in overruling Ramirez objections due to speculation. Court violated Ramirez right to due process convictions and sentences against Ramirez should be reversed and remanded back to trial court.

(Doc. No. 9-1, Ex. 34 at PageID#: 526)

Given the liberal pleading standards extended to *pro se* litigants, the express reference the legal standard for ineffective assistance of counsel, the state purpose of a Rule 26(B) application, which permits ""reopening of the appeal from the judgment of conviction and sentence, based on

23

a claim of ineffective assistance of appellate counsel," and the Respondent's failure to address the substance of Ramirez's cogent argument relating to these issues, the undersigned recommends treating all five issues relating to ineffective assistance of counsel as properly raised before the state appellate court in Ramirez's Rule 26(B) application.

The state appellate court addressed Ramirez's ineffective assistance of appellate counsel claims as follows:

> Appellant argues appellate counsel was ineffective for failing to raise the issue of whether the phone records used at trial were properly authenticated. The record reflects records custodians for both Verizon and Sprint testified at trial and authenticated the phone records. Appellant has not demonstrated had counsel raised this assignment of error on appeal, the result of the proceeding would have been different.

(Doc. No. 9-1, Ex. 36.)

Ramirez filed a Motion for Reconsideration Pursuant to App. R. 26(A), which argued, as he does here, that his Rule 26(B) application for reopening had asserted additional grounds for finding his trial counsel was ineffective.  He asserted as follows:

> the Court erred in denying his Application for Reopening pursuant to App. R. 26(B) as it appears the Court did not address several issues presented; namely, . . . the failure by appellate counsel to argue against the prejudice suffered by bringing in a weapon to demonstrate over the objection of trial counsel, as no weapon was discovered related to the crimes; . . . appellate counsel's failure to properly argue against the denial of the suppression of evidence . . . .

> Additionally, the court held that issues of improper joiner/offenses and eye witness identification in court were denied as being barred by res judicata.  This was incorrect.  Appellant argues that appellate counsel was ineffective for failing to present a proper argument on the issues, not the issues themselves.

(*Id.*, Ex. 37.)  This motion for consideration was denied without addressing the merits of Ramirez's arguments. The Court of Appeals explained the basis for its denial of the motion for reconsideration was as follows:

24

Pursuant to App. R. 26(A), a party may file an application for reconsideration of an appellate decision. The standard for reviewing such an application is whether the application "calls to attention of the court an obvious error in its decision or raises an issue for our consideration that was either not considered at all or was not fully considered by us when it should have been." *Columbus v. Hodge*, 37 Ohio App.3d 68, 523 N.E.2d 515, paragraph one of the syllabus (1987).

"An application for reconsideration is not designed for use in instances where a party simply disagrees with the conclusions reached and the logic used by an appellate court. App. R. 26 provides a mechanism by which a party may prevent miscarriages of justice that could arise when an appellate court makes an obvious error or renders an unsupportable decision under the law. *State v. Owens*, 112 Ohio App.3d 334, 336, 678 N.E.2d 956 (1996).

In the instant case, appellant does not call our attention to an obvious error in our decision or raise an issue we failed to consider.

Appellant's motion to reconsider is overruled.

(*Id*., Ex. 38.)

On August 13, 2018, Ramirez, proceeding *pro se*, filed a timely appeal to the Ohio Supreme Court under Case No. 2018-1174. (*Id*., Ex. 39.)  In his memorandum in support of jurisdiction, Ramirez asserted the following propositions of law:

I. Is an appellant deprived of the effective assistance of counsel when appellate counsel fails to protect his right to due process when his phone records are used without authentication and the defense was not permitted to confront the custodian of the records?

II. Is an Appellant denied the effective assistance of counsel when appellate counsel does not effectively present the issue of improper in-court identifications?

III. Is an appellant denied the effective assistance of counsel when appellate counsel did not effectively argue that proper jury instructions were omitted at trial to appellant's prejudice?

IV. Is an appellant denied the effective assistance of counsel when appellate counsel failed to effectively argue against prejudicial joinder of offenses, cases, and co-defendants?

V. Is an appellant denied the effective assistance of counsel when appellate counsel

failed to effectively argue the trial court's error, over objection, in admitting prejudicial and misleading evidence regarding a weapon?

VI. Is an appellant denied the effective assistance of counsel when appellate counsel failed to effectively argue against the trial court's error of allowing evidence at trial that was obtained without a proper warrant and via improper entry?

VII. Is an appellant denied the effective assistance of counsel when appellate counsel failed to effectively argue against the improper stacking of inferences to obtain appellant's conviction?

(*Id.*, Ex. 40.)  The State filed a memorandum that opposed jurisdiction. (*Id.*, Ex. 41.)

On October 10, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S. C. Prac. R. 7.08(B)(4). (*Id.*,  Ex. 42.)

Respondent asserts that only the claim relating to authentication of phone records should be considered on the merits here, based on the undisputed premise that a claim has not been "fairly presented" when it is presented for the first time in a procedural context which makes consideration on its merits unlikely, such as a motion for reconsideration. *Castille v. Peoples,* 489 U.S. 346, 351 (1989) (holding the exhaustion requirement is not satisfied "where the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefor.' Raising the claim in such a fashion does not, for the relevant purpose, constitute 'fair presentation.'").  The Sixth Circuit explained that the United States Supreme Court's *Castille* decision "requires federal habeas courts to examine the procedural context in which a claim is raised to determine whether it is one in which the merits are considered as of right or only in exceptional circumstances."  *Olson v. Little*, 604 F. App'x 387, 402 (6th Cir. 2015).

Applying *Castille* and *Olson* to Rule 26(A) motions for reconsideration, one Ohio federal district court observed:

in Ohio, a motion for reconsideration of a direct appeal in the supreme court is

26

> limited. . . . It does not allow the presentation of new claims of error. . . . Consequently, raising a new claim in a motion for reconsideration does not satisfy the requirement that a claim must be fairly presented in a timely manner to the state court before it can be raised in federal habeas corpus.

*Ahmed v. Houk*, No. 2:07-CV-658, 2014 WL 2709765, at *6 (S.D. Ohio June 16, 2014), *report and recommendation adopted*, No. 2:07-CV-658, 2020 WL 5629622 (S.D. Ohio Sept. 21, 2020).

However, as Respondent notes, that there is conflict on this issue in case law within this Circuit.  In another case, *Helmas v. Lazaroff*, a judge in this district found that a petitioner who raised a claim first in a Rule 26(A) motion for reconsideration and then in an appeal of that denial to the Ohio Supreme Court which used substantially similar language to the denial of Ramirez's appeal did fairly present his claim, and thus preserved it for habeas review.  *Helms v. Lazaroff*, No. 4:15-CV-00950, 2016 WL 11472272 (N.D. Ohio July 7, 2016), *report and recommendation adopted sub nom. Helms v. Bowen*, No. 4:15-CV-00950, 2018 WL 3995837 (N.D. Ohio Aug. 21, 2018), *aff'd sub nom. Helms v. Bowerman*, 785 F. App'x 274 (6th Cir. 2019).  The Report and Recommendation in *Helms* stated, "[t]he Court cannot affirmatively find that this standard [motion for reconsideration] would have precluded Helms from raising an argument in the Rule 26(A) petition not explicitly raised in his supplemental brief." *Helms,* 2016 WL 11472272, at *7.  Because the decision in *Helms* was appealed and affirmed by the Sixth Circuit court,[7] the undersigned recommends that even if this Court accepts Respondent's argument that Ramirez failed to properly raise these additional grounds

---

[7]  The certificate of appealability was granted for the issue of "whether the prosecution's post-conviction embrace of a theory that is inconsistent with the theory pursued during trial and through sentencing violates a defendant's due process rights," however, the Circuit court noted the determination of the district court that the Rule 26(A) motion was sufficient to fairly present the issue to the state appellate court, and stated that "[a]s a threshold matter, we assume, without deciding, that Helms did not procedurally default his due-process claim." *Helms v. Bowerman,* 785 F. App'x 274, 278-79 (6th Cir. 2019).

27

for finding his appellate counsel was ineffective in his Rule 26(B) application, the claims in ground seven of Ramirez's petition should not be dismissed as procedurally defaulted, but should, instead, be adjudicated on their merits.

### b. Review on the Merits

In his seventh assignment of error, Ramirez asserts that he was denied due process of law as he did not receive the effective assistance of counsel on appeal in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution.  (Doc. No. 1 at 16.)  He argues his appellate counsel was ineffective for the following reasons:

> 1. Failing to "properly" argue trial court error in permitting in court identification from certain witnesses;
>
> 2. Failing to "properly" argue the trial court's failure to instruct the jury on factors to consider regarding eyewitness testimony as proposed by the petitioner;
>
> 3. Failing to "properly" argue joinder of offenses;
>
> 4. Failing to argue trial court failure to suppress Hi-Point weapons owner Mike Strassel's testimony due to speculation, also failed to suppress gun assimilation testimony due to speculation; and
>
> 5. Failing to "properly" argue that the phone records used at Petitioner's trial were not properly authenticated and the custodian of the records did not testify and was not confronted.

(Doc. No. 15 at 58-59.)

In order to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution.  *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an

28

extent that it rendered the proceeding unfair. *Id.* To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id.* at 689. *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The United States Supreme Court explained:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ___, 129 S.Ct. 1411, 173 L.Ed.2d 251. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S.Ct. 1411, 173 L.Ed.2d 251. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard.

*Harrington*, 562 U.S. at105. *See also Kennedy v. Warren*, 428 F. App'x 517, 520 (6th Cir. May 3, 2011); *Phillips v. Sheldon,* No. 3:12 cv 01609, 2014 WL 185777 at *14-15 (N.D. Ohio Jan. 16, 2014).

29

The Supreme Court has held a defendant is entitled to effective assistance of counsel in his first appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Thus, the two-part test enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). *See also Hand v. Houk*, 871 F.3d 390, 410 (6th Cir. 2017). An appellant has no constitutional right, however, to have every non-frivolous issue raised on appeal. *Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Strategic decisions about which issues to raise on appeal are properly left to the sound professional judgment of counsel. *See Perry*, 908 F.2d at 59. Indeed, as the Sixth Circuit recently explained, the "'[m]ere failure to raise a potentially viable claim is not enough, as '[a]ppellate counsel need not raise every non-frivolous claim on direct appeal.'" *Hand*, 871 F.3d at 410 (quoting *Sanders v. Curtin*, 529 F. App'x 506, 521 (6th Cir. 2013)). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

Here, as Respondent noted, Ramirez's appellate counsel did argue three of the issues he asserts as assignments of error    relating to the identification by trial witnesses, failure to instruct the jury on factors to consider regarding eyewitness testimony, and joinder    in the state appellate court. (Doc. No. 16 at 7.)

### i.   Identification by trial witnesses

The fourth assignment of error is Ramirez's state appellate brief asserts: "The trial court erred when it permitted (over objection) in court identification from certain prosecution witnesses of Defendant Ramirez as the perpetrator of the crimes charged." (Doc. No. 9-1, Ex. 28 at Page

30

ID#318-321.)

The state appellate court addressed this issue as follows in its ruling on Ramirez's direct appeal:

{¶ 39} In his fourth assignment of error, Appellant argues the court erred in allowing eleven of the State's witnesses to identify him in court, as a first-time identification in court is inherently suggestive and unreliable.

{¶ 40} In *State v. Vargas*, 5th Dist. Stark No. 2001CA00044, 2002 Ohio 2478, the appellant argued the trial court erred in admitting an in court identification because police did not previously conduct a line-up or a photo array, the description the witness gave to the police was vague, and the in court identification would be inherently suggestive and unreliable. In determining the reliability of the identification, we found the test to be applied is whether, under the totality of the circumstances, the identification is reliable even though the confrontation procedure was suggestive. *Id., citing State v. Parker*, 53 Ohio St.3d 82, 87, 558 N.E.2d 1164 (1990). In making this determination, the court must consider: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the degree of attention of the witness, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time elapsed between the crime and the identification. Id., citing Neil v. Biggers, 409 U.S. 188, 199  200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

{¶ 41} Appellant does not argue any of the in court identifications were unreliable under the test set forth in *Neil v. Biggers, supra*, nor does he cite to the transcript pages in which the complained-of identifications are set forth as required by App. R. 16(A)(7). Rather, he argues we should adopt the position of the Connecticut Supreme Court in *State v. Dickson*, 322 Conn. 410, 141 A.3d 810 (2016). In that case, the Connecticut court held in cases in which identity is an issue, in court identifications which are not preceded by a successful identification in a nonsuggestive identification procedure implicate due process principles and, therefore, must be prescreened by the trial court. *Id*. We decline to adopt such a procedure as a case of first impression in Ohio.

{¶ 42} The fourth assignment of error is overruled.

*State v. Ramirez,* 2017 WL 7689959 at *6-7.  The state appellate court did not address Ramirez's Rule 26(B) assertion that his appellate counsel's advocacy on this issue was so deficient as to constitute ineffective assistance of counsel.

31

As both Ramirez and the state appellate court noted, Ramirez's appellate counsel did not argue the constitutional issue of whether the in-court identifications were unreliable under the constitutional test set out in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972) and did not cite to the transcript pages in which the complained-of identifications were set forth as required by Ohio App. R. 16(A)(7).  However, in his briefing, Ramirez's appellate counsel identified *Neil v. Biggers* as the applicable precedent.  He then chose the strategy of asking the state appellate court to modify that test:

> Acknowledging that Ohio courts follow the aforementioned test, [*Neil v. Biggers*] the basis of Defendant Ramirez' Motion in Limine (and subsequent objections) was premised upon the unreliability of outdated methods of in court identification, primarily due to the overly suggestive nature of the process. As such, the process of in court identification should be modified in Ohio as a case of first impression….citing *State v. Dickson.*

(Doc. No. 9-1, Ex. 28 at PageID #: 374.)  He premised this argument on the assertion that Ohio's test is fundamentally unfair:

> …When it permitted these witnesses to make in-court identifications of Defendant Ramirez, the trial court improperly relied upon Ohio precedent that is simply provides on unfair advantage (sic) to the government, resulting in a denial of due process rights to defendants such as Defendant Ramirez. This Court is urged to use this case as a matter of first impression and adopt the *Dickson* court procedure for first time in-court identifications and prescreen all those who would so testify.

(*Id*. at PageID #: 376.)

Because Ramirez's appellate counsel sought to persuade the state appellate court to modify the existing law, his decision not follow the requirements of Ohio App. R. 16(A)(7) can also be viewed as a strategic decision.  While this legal strategy was ultimately unsuccessful, it does not rise to the level of representation so far below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution.

*Strickland*, 466 U.S. 668.  Instead, it is exactly the kind of strategic decision to which Strickland

requires habeas courts to defer.  *Id.*  Therefore, this issue does not provide grounds for a finding of

ineffective assistance of counsel.

### ii.     Factors to consider regarding eyewitness testimony

The sixth assignment of error in Ramirez's state appellate brief asserts: "The trial court erred

when it failed to instruct the jury on factors to consider regarding eyewitness testimony as proposed

by Defendant-Ramirez."  (Doc. No. 9-1, Ex. 28 at Page ID# 323-24.)

In Ramirez's direct appeal, the state appellate court addressed this issue as follows:

{¶ 47} In his sixth assignment of error, Appellant argues the court erred in refusing to give the jury his requested instruction on eyewitness testimony:

(A) Some things you may consider in weighing the testimony of an identifying witness are:

(1) the capacity of the witness, that is, the (describe age of witness) age, (describe level of intelligence of witness) intelligence, (describe defective senses of witness, if any), and the opportunity of the witness to observe;

(2) the witness' degree of attention at the time the witness observed the offender;

(3) the accuracy of the witness' prior description (or identification, if any);

(4) whether the witness had had occasion to observe the defendant in the past;

(5) the interval of time between the event and the identification; and

(6) all surrounding circumstances under which the witness has identified the defendant (including deficiencies, if any, in lineup, photo display, or one-on-one identification).

(B) If, after examining the testimony of the identifying witness you are not convinced beyond a reasonable doubt the defendant is the offender, you must find the defendant not guilty.

O.J.I. CR 409.05(5).

33

{¶ 48} The official comment to this instruction states:

The court should give this charge on identification only if the charge, or parts thereof, are specifically applicable to the facts at issue. *State v. Guster*, 66 Ohio St.2d 266 (1981), which held under the facts in that case that it was not error to refuse an instruction directing the jury's attention to the potential unreliability of eyewitness testimony, states that "[t]he matter should rest in sound discretion of the trial Court." The "Telfaire Charge" is given in *United States v. Telfaire*, 469 F.2d 552 (C.A.D.C. 1972). For circumstances in which a Telfaire-type instruction would be warranted, *see State v. Dale*, 3 Ohio App.3d 431 (1982).

{¶ 49} In a criminal case, if requested special instructions are correct, pertinent, and timely presented, they must be included, at least in substance, in the general charge. *Cincinnati v. Epperson*, 20 Ohio St.2d 59, 253 N.E.2d 785 (1969), paragraph one of the syllabus. However, a court's instructions to the jury should be addressed to the actual issues in the case as posited by the evidence and the pleadings. *State v. Guster,* 66 Ohio St.2d 266, 271, 421 N.E.2d 157, 160 (1981). Abstract rules of law or general propositions, even though correct, ought not to be given unless specifically applicable to facts in issue. *Id.*

{¶ 50} The decision of whether to give a Telfaire instruction is a matter within the sound discretion of the trial court and depends "in large measure on whether a resolution by the jury of the disputed issues in the case requires or will be clearly assisted by the instruction." *Id.* The Ohio Supreme Court has held:

A trial court is not required in all criminal cases to give a jury instruction on eyewitness identification where the identification of the defendant is the crucial issue in the case and is uncorroborated by other evidence. A trial court does not abuse its discretion in deciding that the factual issues do not require, and will not be assisted by, the requested instructions, and that the issue of determining identity beyond a reasonable doubt is adequately covered by other instructions.

*Id.* at syllabus.

{¶ 51} The court instructed the jury on the credibility of witnesses as follows:

You, as jurors, are the sole judges of the facts and the credibility of the evidence. In weighing the evidence you must consider the credibility of the witnesses. Use the tests of truthfulness that you are accustomed to using in your daily lives.

These tests include the appearance of each witness on the stand; the witness's manner of testifying; the reasonableness of that testimony; the opportunity the witness had to see, hear, and know the things concerning which he or she testified; the witness's accuracy of memory; frankness or lack of it; intelligence; interest; and bias, if any,

34

together with all the facts and circumstances surrounding the testimony. Use these tests to give each witness's testimony such weight as you think proper.

Tr. 3613.

{¶ 52} Appellant makes no argument specific to the reliability of the identification evidence in the instant case in support of his claim of error, other than the witnesses relied upon by the State were "an assorted mix of drug users, criminals, and otherwise unscrupulous people." Brief of Appellant, page 16. The general credibility instruction given by the court adequately addresses these concerns regarding the witnesses' testimony and their identification of Appellant. We find the court did not abuse its discretion in denying the requested instruction, as specific concerns related to the identification testimony addressed by the Telfaire instruction were not raised in the instant case.

{¶ 53} The sixth assignment of error is overruled.

*State v. Ramirez,* 2017 WL 7689959 at *7-9.

Ramirez argues that his appellate counsel's presentation of this argument was ineffective because the state appellate court noted that "Appellant makes no argument specific to the reliability of the identification evidence in the instant case in support of his claim of error, other than the witnesses relied upon by the State were 'an assorted mix of drug users, criminals, and otherwise unscrupulous people.'" (Doc. No. 15 at 61, citing *State v. Ramirez,* 2017 WL 7689959 at *9.) However, the information that he asserts his appellate counsel should have provided   that one witness had previously assaulted and robbed him, and another had "a criminal past"    is wholly consistent with the description of the witnesses provided by appellate counsel in the brief: "the lay witnesses relied upon by the State of Ohio (offering circumstantial evidence) were an assorted mix of drug users, criminals, and otherwise unscrupulous people."  (Doc. No. 9-1, Ex. 28 at PageID#: 379.)  The state appellate court did not address Ramirez's assertion that his appellate counsel's advocacy on this issue was so deficient as to constitute ineffective assistance of counsel, instead ruling that the underlying issue of the jury instruction was raised and ruled on in the direct appeal,

and further review was barred by *res judicata*.  (*Id.*, Ex. 36 at PageID#: 553.)

As the state appellate court noted in its ruling on the direct appeal, there was an instruction given to the jury regarding the credibility of eyewitness testimony, although the trial court did not use the wording Ramirez proposed.  Although Ramirez's trial counsel objected to the trial court's refusal to give the requested instruction, he did not object to the instruction that was given. Tr. 3592. The issue in this ground for appeal was whether the trial court had abused its discretion in refusing to give the instruction that Ramirez requested, and the state appellate court reasonably found that the issues in Ramirez's case were sufficiently different from the those in *Telfaire* that it had not. Although Ramirez asserts that the information impugning the credibility of the witnesses against him should have been detailed with more specificity, he makes no argument that the circumstances of his case were, in fact, substantially similar to those in *Telefaire*.  There is no basis to conclude  that Ramirez's appellate counsel was ineffective in arguing this issue, and this court cannot infer otherwise based solely on the fact that the state appellate court was not persuaded.   Therefore, this does not provide grounds for a finding of ineffective assistance of counsel.

### iii.    Joinder of offenses

The first assignment of error in Ramirez's state appellate brief asserts: "The trial court erred by joining the separate offenses charged in two separate cases, namely *State v. Ramirez*, Case No. 2015 CR 0700 and *State v. Ramirez*, Case No. 2015 CR 0755 in one trial."  (Doc. No. 9-1, Ex. 28 at Page ID# 312-14.)

The state appellate court addressed this issue as follows in its ruling on Ramirez's direct appeal:

{¶ 14} Joinder of offenses is governed by Crim. R. 8(A), which states offenses may be joined if they are of the same or similar character, are based on the same act or

36

transaction, or are based on two or more acts or transactions connected together or part of a common scheme or course of criminal conduct. Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to witnesses. *See, State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). Joinder is appropriate where the evidence is interlocking and the jury is capable of segregating the proof required for each offense. *State v. Czajka*, 101 Ohio App.3d 564, 577 578, 656 N.E.2d 9 (8th Dist. Cuyahoga 1995).

{¶ 15} If similar offenses are properly joined pursuant to Crim. R. 8(A), the accused may move to sever the charges pursuant to Crim. R. 14, wherein the burden is on the defendant to demonstrate his rights would be prejudiced by joinder. *State v. Strobel*, 51 Ohio App.3d 31, 33, 554 N.E.2d 916 (3rd Dist. Henry 1988).

{¶ 16} A Crim.R. 14 motion for severance of counts due to prejudicial misjoinder is waived unless it is renewed at the close of the state's case or at the conclusion of all the evidence. *Strobel,* supra, paragraph two of the syllabus; *State v. Owens* (1975), 51 Ohio App.2d 132, 5 O.O.3d 290, 366 N.E.2d 1367, paragraph two of the syllabus (1975).

{¶ 17} In the instant case, Appellant did not renew his motion for relief from prejudicial joinder. Nonetheless, if it appears a defendant is prejudiced by joinder, a trial court may grant a severance. *State v. Brinkley* 105 Ohio St.3d 231, 824 N.E.2d 959, 2005 Ohio 1507. The defendant bears the burden of proving the trial court abused its discretion in denying severance. *Id.*

{¶ 18} To prevail on a claim to sever counts, the defendant has the burden of demonstrating: 1) his rights were actually prejudiced; 2) at the time of the motion to sever, the defendant provided the trial court with sufficient information so it could weigh the considerations favoring joinder against the potential prejudice to the defendant's right to a fair trial; and 3) given the information provided to the court, the court abused its discretion in refusing to sever the charges. *State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1992), *citing State v. Hamblin*, 37 Ohio St.3d 153, 158 159, 524 N.E.2d 476 (1988) and *Drew v. United States*, 331 F.2d 85 (D.C.Cir.1964).

{¶ 19} A defendant has not demonstrated prejudice where: (1) if the counts were severed, evidence of alleged misconduct from each count would be admissible in separate trials, and, if not, (2) if such evidence would not be admissible, the evidence of each count is simple and distinct. *Id.*

{¶ 20} In the instant case, the focus at the hearing was on joinder of defendants rather than joinder of offenses. Thus, Appellant did not provide the trial court with sufficient information to weigh the considerations favoring joinder of offenses

37

against the potential prejudice of his right to a fair trial.

{¶ 21} Further, we find the evidence of each count is simple and distinct. The indictments involved two incidents which occurred on two separate dates. The witnesses and victims were different as to the two events which resulted in the charges. The trial court clearly laid out each separate offense as set forth in the indictment in the jury instructions. Tr. 3617 3654. Further, the court instructed the jury each of the offenses constituted a separate and distinct matter, and the jury must consider each charge separately, uninfluenced by their verdict as to the other charges. Tr. 3659.

{¶ 22} We find Appellant has not demonstrated prejudice from joinder of offenses. The first assignment of error is overruled.

*State v. Ramirez,* 2017 WL 7689959 at *3-4.  The state appellate court did not address Ramirez's

assertion that his appellate counsel's advocacy on this issue was so deficient as to constitute

ineffective assistance of counsel, instead ruling that the underlying issue of the jury instruction was

raised and ruled on in the direct appeal, and further review was barred by *res judicata*.  (Doc. No.

9-1, Ex. 36 at PageID#: 553.)

Ramirez argues that his appellate counsel was ineffective because he "failed to argue that

there was no behavioral fingerprint linking the cases."[8]  (Doc. No. 15 at 62.)  Instead, his appellate

counsel identified the correct legal standard, noting that "[u]nder Crim. Rule 8(A), two or more

offenses may be charged together is the offenses 'are of the same or similar character, or are based

on the same act or transaction, or are based on two or more acts or transactions connected together

or constituting parts of a commons scheme or plan, or are part of a course of criminal conduct."

(Doc. No. 9-1, Ex. 28 at PageID #: 368.)  He then asserted that because the State failed to produce

simple and direct evidence in the offenses occurring on June 24 and June 26, 2015, the joinder of

---

[8] He also reiterates at length arguments against the joinder that are procedurally barred from consideration here, and were in fact raised before the state appellate court.  (Doc. No. 15 at 62-63.)

these cases prejudiced Ramirez.  (*Id.*, at PageID #: 369.)  While this is a different argument than the one now advocated by Ramirez, this argument "conduct falls within the wide range of reasonable professional assistance" and is, again, the type of strategic decision to which this court should defer. *Strickland,* 466 U.S. at 689.  Therefore, this issue does not provide grounds for a finding of ineffective assistance of counsel.

### iv.    Failure to suppress testimony related to the gun found at the scene

Next, Ramirez argues that his appellate counsel was ineffective for failing to raise on appeal two issues relating to the admission of evidence regarding the gun that was found at the scene of the crime: the trial court's refusal to suppress the allegedly speculative testimony of a gun store owner, and the failure to "suppress gun assimilation testimony due to speculation."  (Doc. No. 15 at 64-65.)  The state appellate court did not address Ramirez's assertion that his appellate counsel's advocacy on this issue was so deficient as to constitute ineffective assistance of counsel.

At trial, the prosecution introduced as evidence a gun magazine, which was found at the scene of one crime; the right-side grip of a pistol, which was found near the scene of the same crime; and a "prop" or model of the gun that would fit both the magazine and the handle.  (Doc. No. 15 at 65.)  It is undisputed that no gun was recovered from either crime scene.  Ramirez notes    and Respondent does not contest    that both he and his codefendant were excluded as contributors to the DNA found on the gun magazine and grip, and that witnesses provided conflicting descriptions of the color of the gun.  (*Id.*)  At trial, his defense counsel made the following objection:

> I object to the extent that pictures of the gun, that's not the gun that anybody has ever said was used in the commission of any crime.  All we have are some pieces of a gun and that's it.  So to the extent we're showing a gun that has never been found, never been authenticated, I'm objecting to all that.

(Doc. No. 10-21, PageID#: 4028.)

39

The State also presented testimony from a gun store owner, who identified the grip as coming from a 9mm Stallard Arms handgun and provided the same model of gun from his own collection for use as the "prop" gun at trial.  (Doc. No. 10-12, PageID#: 2216, 2151.)

Respondent asserts that because a gun was present in both crimes, "an assignment of error regarding a gun would have been frivolous or even if arguably too prejudicial in some way under Evid. R. 403, there is no showing that a hypothetical assignment of error regarding a gun was in any way stronger than the assignments of error that were, in fact, raised by appellate counsel." (Doc. No 9 at 58.)

Again, this decision falls within the wide latitude for strategic decision making provided for defense counsel under *Strikland*.  There is no evidence    and Ramirez does not argue    that the evidence relating to the gun was dispositive to the outcome of his case.   As discussed *supra,* an appellant has no constitutional right to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel. *See Perry*, 908 F.2d at 59.  Here, the issues relating to the use of a prop gun at trial are not clearly stronger than those presented in Ramirez's appeal, and therefore the presumption of effective assistance of counsel is not overcome. *See Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Therefore, Ramirez's appellate counsel's decision to not to challenge this decision, and instead to focus on raising issues on appeal that he perceived to be stronger, does not provide grounds for a finding of ineffective assistance of counsel.

v.    **Authentication of phone records**

The final issue that Ramirez presents as evidence of ineffective assistance of counsel is the

only one that is undisputably not procedurally defaulted: the alleged failure of his appellate counsel to argue that cell phone records introduced at trial were not authenticated and the custodian not confronted.  (Doc. No. 1 at 16.)

> The state appellate court addressed this issue as follows:
>
> Appellant argues appellate counsel was ineffective for failing to raise the issue of whether the phone records used at trial were properly authenticated. The record reflects records custodians for both Verizon and Sprint testified at trial and authenticated the phone records. Appellant has not demonstrated had counsel raised this assignment of error on appeal, the result of the proceeding would have been different.

(Doc. No. 9-1, Ex. 36 at PageID #: 553.)

Ramirez rests his argument on the fact that his cellphone service was not provided by Sprint or Verizon, but rather by Straight Talk Wireless.  (Doc. No. 15 at 60.)  According to the Straight Talk website, "Straight Talk offers service on all 4 major networks," meaning that its phones use networks operated by Sprint, Verizon, AT&T and T-mobile.   "Why Straight Talk," https://www.straighttalk.com/whyst/phones (last visited October 20, 2020).  He disputes the state appellate court's conclusion that "records custodians for both Verizon and Sprint testified at trial and authenticated the phone records," noting that his trial counsel objected to the use of the records, and the Verizon representative who testified at trial, when presented with the Straight Talk phone records, stated "this is not our record. . . . The only thing I can testify to is what I produced."  (Doc. No. 15 at 60.) Ramirez asserts that his appellate counsel was ineffective for raising these challenges to the phone records, which he describes as "critical and prejudicial" evidence.  (*Id*. at 61.)

Respondent, citing the appellate court ruling, asserts this argument is "frivolous    not even possible" and does not address its merits.  (Doc. No. 9 at 57.)  Therefore, this court reviewed the transcript from the trial testimony regarding the phone records.

It is undisputed that the cell phone records of co-defendant Luckie, whose service was provided by Sprint, were properly authenticated.  (Doc. No. 15 at 60; Doc. No. 10-8 at PageID #: 1347-49.)  It is undisputed that the records "used, in part, to justify the joinder of the cases with a co-defendant, Luckie," were calls between Luckie's business line and the number belonging to Ramirez.  (Doc. No. 10-18 at PageID#: 3450-61.)  Some of these calls were made using Verizon's network.  (*Id*.)  At the defense's request, the prosecution made clear that although the records established connection between the two phones, they could not establish who was using the phones at the time of the calls.  (*Id*. at PageID #: 3455.)

Further, the Verizon representative properly authenticated his own records, and the testimony Ramirez cites was given when he was asked to interpret additional records provided by the Mansfield Police Department.  (Doc. No. 10-8 at PageID #: 1345-50.)  The trial court later called a Mansfield Police testify regarding those additional records.  (Doc. No. 10-18 at PageID#: 3450-61.)

Even if Ramirez's appellate counsel had raised this issue on direct appeal and prevailed, this would have affected only testimony relating to calls between the allegedly unauthenticated cell phone records of Ramirez's line and the phones of other individuals referenced in the trial testimony, but not charged in the case.  The most significant and persuasive cell phone evidence related to calls between the phones of the co-defendants, which were indisputably authenticated by the Sprint representative, as they involved Luckie's phones.  Therefore, the state appellate court's determination that Ramirez did not demonstrate that, "had counsel raised this assignment of error on appeal, the result of the proceeding would have been different" is sound, and this issue does not

provide grounds for a finding of ineffective assistance of counsel.

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED.


Date:   October 30, 2020                                   *s/ Jonathan Greenberg*
                                                           Jonathan D. Greenberg
                                                           United States Magistrate Judge


## <u>OBJECTIONS</u>

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**